DLA PIPER

**DLA Piper** LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
www.dlapiper.com

Timothy E. Hoeffner
timothy.hoeffner@dlapiper.com
**T** 215.665-3341
**F** 215-606-3341

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 02/20/2014

February 18, 2014

**VIA ECF**

Honorable Jesse M. Furman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 630
New York, NY 10007

**Re: Island Partners et al. v. Deloitte & Touche LLP, 05-cv-02770 (JMF)**
**In re Adelphia Communications Corp. Securities & Derivative Litigation, 03-cv-01529 (JMF)**

Dear Judge Furman:

On behalf of Deloitte & Touche LLP ("Deloitte"), I write to respond to plaintiffs' letter of February 17, 2014, (1) seeking clarification or reconsideration of this Court's February 12, 2014 Order denying the request made in plaintiffs' February 11, 2014 letter to compel the production of documents from Deloitte; and (2) seeking leave to take a total of 13 depositions—three above the limit in the Federal Rules of Civil Procedure. Both requests have already been considered by this Court, and should again be denied.

Plaintiffs' Request for Production of Documents

In its February 12, 2014 Order, the Court held: "[T]o the extent that Plaintiffs' responsive letter can be construed as a letter motion seeking an order to compel certain discovery, it is DENIED, substantially for the reasons - both procedural and substantive - set forth in Defendants' reply letter." Plaintiffs' February 17 letter points to no information or case law that the Court overlooked in its February 12 Order and instead merely repeats arguments made in plaintiffs' February 11 letter. Plaintiffs' request for reconsideration should be denied on this ground alone. *See Patterson v. United States*, No. 04 Civ. 3170 (WHP), 2006 WL 2067036, at *3 (S.D.N.Y. July 26, 2006) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), which provides that reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters in other words, that might reasonably be expected to alter the conclusion reached by the court").

Plaintiffs' requests should also be denied for the reasons originally set forth in Deloitte's February 12 reply letter. With regard to procedure, plaintiffs do not contest the primary procedural point made in Deloitte's reply letter: although the Court decided Deloitte's motion to dismiss on December 27, 2013, thereby allowing plaintiffs to renew any motion for a further Deloitte document production after meeting and conferring with Deloitte, plaintiffs waited for more than *six* weeks after that order to raise an issue with Deloitte's production to the Court. Plaintiffs' motion is again appropriately denied in light of this delay.

DLA PIPER

With regard to the substance of plaintiffs' request, plaintiffs again cannot contest that Deloitte has already produced all the documents created after 1994 that are requested by plaintiffs. Instead, plaintiffs repeat their complaint that Deloitte has produced more than a million pages of documents, making it difficult for plaintiffs to find specific documents. This is an issue of plaintiffs' own making, however, because they requested this production by serving in this action a document request seeking "[a]ll documents previously produced by Deloitte in any Adelphia litigation" (Plaintiffs' First Requests to Deloitte for Production of Documents, dated Nov. 24, 2013, Request No. 3)—a point Deloitte made in its February 12 reply letter but that plaintiffs ignore here. Rather than seek to come to terms with the fact that they requested the greater universe of documents, plaintiffs falsely state that Deloitte's production contains documents that are not responsive to plaintiffs' requests. (Pls. Ltr. at 2.) But Deloitte produced to plaintiffs the documents produced by Deloitte in the *Adelphia v. Deloitte v. Rigas* action (*i.e.*, an "Adelphia litigation"), and thus Deloitte's entire production was responsive to plaintiffs' requests *in this action*.

Additionally, Plaintiffs do not deny that they have had Deloitte's production for years, only that they did not bother to review the production fully as part of the *Adelphia v. Deloitte v. Rigas* action. But plaintiffs ignore the fact (raised in Deloitte's February 12 letter) that the confidentiality agreement in place in that action allowed plaintiffs to use those documents for this action. As a result, plaintiffs could have begun to review Deloitte's documents for the purposes of this action years ago (and arguably were required to do so by Rule 11 before filing the amended complaint in this action). Plaintiffs' complaint about the searchability of the documents produced by Deloitte, which were produced in the exact same manner to Adelphia and the government, is unfounded, given that it was made for the first time last week and is belied by plaintiffs' assertion that they plan to amend their complaint based on documents located in Deloitte's production. Indeed, plaintiffs could themselves have made this production text searchable when it was first received several years ago, but chose not to do so. Finally, despite plaintiffs' bald assertions to the contrary, the Deloitte documents were produced as they were kept in the ordinary course of business, with the workpapers produced separately from documents produced by custodian.

In short, plaintiffs simply seek to place the burden on defendants to do their work for them by combing through the production for certain categories of documents that plaintiffs believe will help them to make their case, including with respect to claims previously dismissed by the Court. It would, of course, be burdensome for Deloitte to go through the production it has already made to plaintiffs, in order to cull out a subset of the production and then to re-produce only those documents to plaintiffs. Additionally, plaintiffs' request for this approach is procedurally flawed, as it was made for the first time in its letter to the Court, rather than as part of a meet and confer process that could have taken place well before the pending close of fact discovery on March 7, 2014.

With regard to Deloitte's documents for the period prior to 1995—documents that have never been produced in any other litigation relating to Adelphia—plaintiffs again fail even to try to explain how documents from that long ago could serve as the basis for their claims. Without any such explanation, there is no reason why Deloitte should bear any burden to generate an index of the boxes containing Adelphia related materials from the pre-1995 time period (so that plaintiffs can determine whether they want to bear the burden of searching the warehouses for responsive documents). Finally, plaintiffs'

DLA PIPER

proposal is again procedurally flawed, as it was made to Deloitte for the first time in this letter rather than as part of a meet and confer process which could have taken place long ago.

Plaintiffs' Request To Take the Deposition of 13 Witnesses

Plaintiffs' request for leave to take three depositions beyond the ten allowed by the Federal Rules should also be denied. As explained in our prior letter, much of the discovery that is being conducted appears to be focused on the Rigases' ongoing efforts to overturn their criminal convictions. In response to extensive questioning concerning the basis for the claims in this action, plaintiffs' Rule 30(b)(6) witness, Michael Rigas, testified yesterday that he could not identify any false statements made in the Adelphia or Rigas Family Entities' financial statements that formed the basis for their claims. In light of that testimony, the proposed depositions of numerous individuals who were not identified in the parties' Rule 26 disclosures and who prepared those financial statements or were counterparties to agreements reflected in the financial statements are unnecessary. It is inconceivable that plaintiffs will be able to pursue a claim against Deloitte based on a failure to satisfy professional standards relating to the audit of financial statements that plaintiffs do not contend were misstated. Instead, as acknowledged by plaintiffs' Rule 30(b)(6) witness, the claim essentially revolves around an untenable theory that Deloitte should have issued an audit opinion on Adelphia's 2001 financial statements in the face of a series of unresolved issues relating to (i) an SEC investigation, (ii) a Special Committee investigation addressing related party transactions, (iii) backdating of accounting records to conceal the source of funds by the Rigas Family Entities to purchase Adelphia securities, (iv) what Michael Rigas described as a series of lies by the independent directors, including withholding information from Deloitte concerning a "backstop" provided for a Rigas Family transaction and a waiver of a deadline for filing financial statements that was obtained from a group of lenders. Ten depositions are more than sufficient to address these issues.

In a single paragraph of their letter, plaintiffs make conclusory assertions rather than particularized showings as to why these extra depositions are needed. Deloitte strongly believes that there is no need for either party to take more than ten depositions, let alone depositions that are unnecessary and/or cumulative. Indeed, plaintiffs' discovery would actually provide for 14 depositions, since plaintiffs' Rule 30(b)(6) notice is extremely broad and requires Deloitte to produce two witnesses.

Respectfully submitted,

Timothy E. Hoeffner

EAST\70125321.2

Plaintiffs' request for reconsideration or clarification is DENIED substantially for the reasons stated in this responsive letter. Assuming that Plaintiffs overcome the Fifth Amendment issues with respect to the proposed witnesses, the Court grants them leave to take up to 13 depositions. All dates and deadlines remain in effect. The Clerk of Court is directed to terminate Docket No. 865.

SO ORDERED.

February 20, 2014