**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE ADELPHIA COMMUNICATIONS
CORPORATION SECURITIES AND
DERIVATIVE LITIGATION

03 MDL 1529 (JMF)

---

This Document Relates To:

*Island Partners, et al. v. Deloitte & Touche LLP*
(05-CV-2770)

---

## DELOITTE & TOUCHE LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Timothy E. Hoeffner
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
T:  212-335-4500
F:  212-335-4501

Courtney G. Saleski
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T:  215-656-2431
F:  215-656-3301

James E. Canning
**Cravath, Swaine & Moore LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
T:  212-474-1000
F:  212-474-3700

*Attorneys for Defendant*
*Deloitte & Touche LLP*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF FACTS AND PROCEDURAL HISTORY ........................... 2

     A.    Adelphia Conceals Information, Forcing Deloitte to Suspend its Audit. .............. 3

     B.    The Rigas Family Enters Into a Settlement Agreement With the Government, the SEC, and Adelphia. ...................................................... 4

     C.    Plaintiffs File Suit Seeking to Recover From Deloitte Their Losses Incurred As a Result of the Fraud Scheme at Adelphia. ........................................ 4

III.    STANDARD FOR SUMMARY JUDGMENT ................................................. 5

IV.    ARGUMENT ..................................................................................................... 6

     A.    Zito I Lacks Standing and, Thus, Deloitte is Entitled to Summary Judgment against Zito I. ................................................................... 6

     B.    James Rigas, Highland Holdings, and Highland Preferred Were Not in Privity With Deloitte and, Thus, Deloitte Is Entitled to Summary Judgment on Their Contract and Negligence Claims. ......................................... 11

          1.    Deloitte is entitled to summary judgment on their breach of contract claims. ........................................................................ 12

          2.    Deloitte is entitled to summary judgment on their negligence claims. ....................................................................................... 13

     C.    The Doctrine of *In Pari Delicto* Bars the Claims of Zito Media and, Thus, Deloitte is Entitled to Summary Judgment against Zito Media. ......................... 14

V.     CONCLUSION ................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albany Sav. Bank, FSB v. Halpin*,
117 F.3d 669 (2d Cir. 1997) ............................................................................... 10

*Cacchillo v. Insmed Inc.*,
638 F.3d 401 (2d Cir. 2011) ................................................................................. 6

*Caplin & Drysdale, Chartered v. United States*,
491 U.S. 617 (1989) ........................................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 5, 6

*Evans v. Otis Elevator Co.*,
168 A.2d 573 (Pa. 1961) ..................................................................................... 12

*Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, and Cabot*,
458 A.2d 545 (Pa. Super. Ct. 1983) .................................................................... 14

*In re Mediators, Inc.*,
105 F.3d 822 (2d Cir. 1997) ............................................................................... 15

*In re Phar-Mor, Inc. Securities Litig.*,
892 F. Supp. 676 (W.D. Pa. 1995) ...................................................................... 13

*Landell v. Lybrand*,
107 A. 783 (Pa. 1919) ........................................................................................ 13

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
861 F. Supp. 2d 262 (S.D.N.Y. 2012) .................................................................. 6

*Official Committee of Unsecured Creditors of Allegheny Health Education and Research
Foundation v. PricewaterhouseCoopers, LLP*,
989 A.2d 313 (Pa. 2010) ............................................................................... 14, 15

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
267 F.3d 340 (3d Cir. 2001) ............................................................................... 15

*Phillips v. Cricket Lighters*,
841 A.2d 1000 (Pa. 2006) ................................................................................... 13

*Port Wash. Teachers' Ass'n v. Bd. of Educ.*,
478 F.3d 494 (2d Cir. 2007) .............................................................................. 6, 7

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997)......................................................................................6

*Scott v. City of New York*,
   592 F. Supp. 2d 386 (S.D.N.Y. 2008).....................................................................6

*Tredennick v. Bone*,
   647 F. Supp. 2d 495 (W.D. Pa. 2007)....................................................................13

*United States v. Rigas*,
   490 F.3d 208 (2d Cir. 2007)..............................................................................1, 10

*United States v. United States Currency*,
   895 F.2d 908 (2d Cir. 1990).................................................................................10

*Zito I, LP v. Century/ML Cable Venture*,
   311 Fed. App'x 455 (2d Cir. 2009)................................................................7, 9, 11

*Zito I, L.P. v. Century/ML Cable Venture*,
   07-4358- bk(L), 07-4627-bk(L), 2009 WL 6763695 (2d Cir. Jan. 15, 2009)....................10, 11

## STATUTES

21 U.S.C. § 853(c) ....................................................................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...............................................................................................5

# I.      INTRODUCTION

The claims in this case essentially boil down to an attempt to blame Deloitte for the fraud that the Rigas family committed and deliberately hid from Deloitte.  That fraud has been the subject of numerous criminal prosecutions and civil lawsuits, and the facts of it are well-documented.  In this case, plaintiffs Zito I, L.P., and Zito Media, L.P.—as alleged successors to a series of entities[1] owned and controlled by John and Timothy Rigas (who were both convicted of securities fraud, bank fraud, and conspiracy to commit securities fraud and bank fraud[2]), Michael Rigas (who pled guilty to making a false entry in a record[3]), and James Rigas (who settled securities fraud claims by the U.S. Securities and Exchange Commission)—as well as James Rigas in his personal capacity, claim they were damaged by Deloitte's (1) inability to issue an audit opinion on Adelphia's 2001 financial statements, and (2) failure to conduct its audit in a manner that permitted the Rigases to defend themselves from criminal charges and related civil proceedings.  Those novel and meritless theories fail here because, for a variety of reasons, Deloitte is entitled to summary judgment as to each plaintiff and each claim.

First, Deloitte is entitled to summary judgment on all claims asserted by Zito I because Zito I does not have standing.  Zito I never received a valid transfer of interests from its alleged predecessor entities because, at the time of the purported transfer, all of the relevant interests had been pledged to the Government.  Because Zito I has no legally protected interests in this suit, Deloitte is entitled to judgment as a matter of law on all of Zito I's claims.

---

[1] Each of Highland Video Associates, L.P., Hilton Head Communications, L.P., Highland Prestige Georgia, Inc., Coudersport Cable Television Company, Highland Holding, G.P., and Highland Preferred Communications 2001, LLC, the alleged predecessors to plaintiffs Zito Media, L.P. and Zito I, L.P., is identified by name in the superseding indictment and each served as an instrumentality of the criminal enterprise.  *See* Statement of Facts ("SOF") ¶ 14.

[2] *See United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) (affirming convictions of John and Timothy Rigas).

[3] *See* SOF ¶ 28.

Second, Deloitte is entitled to summary judgment on James Rigas's claims for breach of professional duty, negligent misrepresentation, and breach of contract because there is no dispute that he was not in privity with Deloitte.  Similarly, Highland Holdings, G.P., and Highland Preferred Communications 2001, LLC ("Highland Preferred"), (both alleged predecessors to Zito I) were not in privity with Deloitte and, thus, assuming *arguendo* that the Court does not resolve the standing issue against Zito I (which the Court should and which would resolve all of Zito I's claims), Deloitte is entitled to summary judgment on Zito I's claims for breach of professional duty, negligent misrepresentation, and breach of contract asserted on behalf of Highland Holdings and Highland Preferred.  Pennsylvania law requires a plaintiff to show privity of contract with an accountant or auditor in order to recover in negligence or contract and, thus, Deloitte is entitled to judgment as a matter of law.

Finally, Deloitte is entitled to summary judgment on all claims asserted by Zito Media because the doctrine of *in pari delicto* bars those claims.  This Court dismissed John Rigas's claims on *in pari delicto* grounds and discovery has revealed that John Rigas was (at all relevant times) the sole owner of and controlling decision-maker for Coudersport Cable Television Company ("Coudersport") (the only alleged predecessor for which Zito Media asserts claims).  Coudersport, an entity wholly owned and controlled by John Rigas, is subject to the *in pari delicto* defense precisely to the same extent as was its sole owner, John Rigas.  Accordingly, for the same reasons this Court previously ruled that John Rigas's claims were barred, so too are Coudersport's.

## II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

The facts set forth below are undisputed and are derived primarily from depositions of witnesses and documents produced by plaintiffs in this case and *Adelphia Comm. Corp. v.*

*Deloitte & Touche LLP*, No. 00598, before the Philadelphia Court of Common Pleas. The facts show that the alleged predecessors-in-interest to plaintiffs Zito I, L.P., and Zito Media, L.P., were owned and operated by four members of the Rigas family who engaged in an overarching fraud that saw two of them convicted of federal securities crimes, one plead guilty to a federal crime, and all four settle claims for violations of the federal securities laws with the SEC.

**A.      Adelphia Conceals Information, Forcing Deloitte to Suspend its Audit.**

The allegations contained in plaintiffs' Second Amended Complaint center around Deloitte's engagement by Adelphia Communications Corporation ("Adelphia") and certain entities owned by John, Timothy, Michael, and James Rigas (collectively, the "Rigas Family" or the "Rigases"). *See* Statement of Facts ("SOF") ¶¶ 50, 54. This engagement provided that Deloitte was to audit the financial statements of Adelphia and of certain entities owned by the Rigas Family to the extent those entities were parties to a co-borrowing agreement with Adelphia. SOF ¶ 50. During the course of the 2001 audit, certain issues came to light indicating that various members of Adelphia management, including members of the Rigas Family, had concealed material information from Deloitte. SOF ¶ 51. The provision of false documents to Deloitte in connection with efforts to complete the 2001 audit is addressed in the Findings of Fact and Conclusions of Law of Judge Castel in *S.E.C. v. Adelphia Communications Corp.*, 02-cv-05776 (S.D.N.Y. Nov. 16, 2006) (granting injunctive relief against Michael Mulcahey, former Vice President and Assistant Treasurer of Adelphia and later an employee of and consultant for Zito Media, based on "intentional delivery" of "phony" documents to "hide from . . . Deloitte" Adelphia's false reporting and delivery of eight false management representation letters to Deloitte). SOF ¶¶ 30-32. Deloitte suspended and never completed its audit of the 2001 financial statements before being terminated. SOF ¶¶ 52-53.

3

**B.      The Rigas Family Enters Into a Settlement Agreement With the Government, the SEC, and Adelphia.**

John Rigas, Timothy Rigas, Michael Rigas, and Michael Mulcahey were indicted for violations of the federal securities laws.  SOF ¶ 23.  In addition, in 2002, the SEC commenced a civil enforcement action against Adelphia, John Rigas, Timothy Rigas, Michael Rigas, and James Rigas, and Adelphia commenced an action against the Rigas Family and certain entities owned by the Rigas Family.  SOF ¶¶ 24, 25.  In July 2004, John and Timothy Rigas were convicted of securities fraud, bank fraud, and conspiracy to commit securities and bank fraud.  SOF ¶¶ 26, 27.  In May 2005, James Rigas, Michael Rigas, Timothy Rigas, and John Rigas settled the SEC action against them.  SOF ¶ 35.  In November 2005, Michael Rigas pled guilty to making a false entry in a record.  SOF ¶ 28.

After the convictions of John and Timothy Rigas, the Government sought forfeiture of certain assets.  SOF ¶ 33.  In order to resolve the outstanding proceedings among the Rigas Family, the Government, the SEC, and Adelphia, various settlement agreements were executed in April 2005, one of which was a settlement agreement between the Government and the Rigas Family ("Government-Rigas Settlement Agreement").  SOF ¶ 34.  Under the Government-Rigas Settlement Agreement, the Rigas Family "consent[ed] to the forfeiture to the United States . . . of all of their respective interests in the Forfeited Managed Entities and the Other Forfeited Entities."  SOF ¶ 36.

**C.      Plaintiffs File Suit Seeking to Recover From Deloitte Their Losses Incurred As a Result of the Fraud Scheme at Adelphia.**

Despite the guilty verdicts of John and Timothy Rigas, the guilty plea of Michael Rigas, the settlement with the SEC, and the forfeiture to the Government of many of the alleged predecessors-in-interest to the plaintiff entities, plaintiffs maintain that they are entitled to recover from Deloitte for losses resulting from the fraud scheme that the Rigas Family

4

perpetrated through 2002.  SOF ¶¶ 55-57.  Plaintiffs are Zito Media, Zito I, James Rigas.  SOF ¶¶ 1, 4, 15.  Zito Media asserts claims on behalf of Coudersport.  SOF at ¶ 1.  Zito I asserts claims on behalf of Highland Holdings, Highland Preferred, Highland Prestige Georgia, Inc. ("Highland Prestige"), Highland Video Associates, L.P. ("Highland Video"), and Hilton Head Communications, L.P. ("Hilton Head").  SOF ¶ 4.  Highland Holdings, Highland Prestige, Highland Video, and Hilton Head, however, explicitly were forfeited to the Government pursuant to the Government-Rigas Settlement Agreement.  SOF ¶¶ 36, 38.  Highland Preferred, as a wholly-owned subsidiary of Highland Holdings, also was forfeited.  SOF ¶ 7.

At all times relevant, John Rigas was the sole owner and operator of Coudersport.  SOF ¶ 2.  He and his sons also owned and operated all of the alleged predecessors-in-interest to Zito I.  SOF ¶¶ 5, 7, 9, 10, 11, 12.[4]

The Second Amended Complaint alleges that Deloitte breached certain contracts with plaintiffs; that Deloitte breached its professional duties to plaintiffs; and that Deloitte is liable to plaintiffs for negligent misrepresentation.  SOF ¶ 54.  In the depositions of James Rigas and the corporate representative of Zito I and Zito Media, the damages sought to be recovered in this action were identified as the value of the assets forfeited to the Government and compensation for James Rigas's loss of employment.  SOF ¶¶ 55-57.

### III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions file, together

---

[4] John Rigas's daughter, Ellen Rigas Venetis, also had small ownership interests in Highland Holdings, SOF ¶ 5, and Highland Prestige, SOF ¶ 9.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 267 (S.D.N.Y. 2012) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)).  The moving party bears the initial burden of establishing the absence of genuine issue of material fact.  *See Celotex*, 477 U.S. at 323; *see also Liberty Media*, 861 F. Supp. 2d at 267.  If the non-moving party then fails to raise a genuine issue of material fact, summary judgment is proper.  *Scott v. City of New York*, 592 F. Supp. 2d 386, 397 (S.D.N.Y. 2008).  "[T]he non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Liberty Media*, 861 F. Supp. 2d at 267 (citations omitted).  Moreover, "only admissible evidence need be considered by the trial court."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Indeed, the purpose of summary judgment is to weed out those cases in which there is no genuine factual dispute, so "it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Id.*

## IV.    ARGUMENT

### A.    Zito I Lacks Standing and, Thus, Deloitte is Entitled to Summary Judgment against Zito I.

Zito I does not have standing because all of the interests of Zito I's predecessor entities were forfeited to the Government prior to any putative assignment of those interests to Zito I. *See, e.g., Cacchillo v. Insmed Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (explaining that plaintiff has burden to prove standing); *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d

Cir. 2007) (stating that the "irreducible constitutional minimum of standing" requires "an invasion of a legally protected interest" (internal quotation marks omitted)).  The summary judgment record shows that the Rigas family, under the plain language of their settlement agreement with the Government, forfeited to the Government all of their relevant interests in the alleged predecessors to Zito I.[5]   Indeed, in *Zito I, LP v. Century/ML Cable Venture*, 311 Fed. App'x 455 (2d Cir. 2009), the U.S. Court of Appeals for the Second Circuit held that the alleged transfer of litigation rights from Highland Holdings to Zito I was invalid and thus Zito I had no legally protected interest and lacked standing to pursue a breach of contract claim allegedly belonging to Highland Holdings.  The same reasoning applies here with respect to Highland Holdings and the other alleged predecessor entities.

The terms of the Government-Rigas Settlement Agreement (executed on April 25, 2005) are unambiguous:  "each person included in the Rigas Family consent[ed] to the forfeiture to the United States . . . [of] ***all of their respective interests*** in" all of Highland Holdings, Highland Prestige, Highland Video, and Hilton Head.  SOF ¶ 36.[6]  Highland Preferred is and was a wholly owned subsidiary of Highland Holdings, SOF ¶ 7, and, thus, likewise was forfeited as part of the express forfeiture of Highland Holdings.

Where the Government and the Rigas family negotiated exceptions to such blanket forfeitures, the agreement was explicit.  Specifically, the Rigases were permitted to retain Bucktail Broadcasting Corp. ("Bucktail") and Coudersport.  SOF ¶¶ 39-41.  Bucktail was in part owned by Highland Video, an entity that clearly was forfeited to the Government.  SOF ¶¶ 38, 40.  The Government-Rigas Settlement Agreement therefore contained an explicit carve out for

---

[5] Those predecessor entities were wholly owned by the Rigas family and, therefore, the forfeiture of all of those interests was tantamount to the forfeiture of the entities themselves.

[6] On the same date, by virtue of Adelphia-Rigas Settlement Agreement, the Rigases agreed to "maintain the Forfeited Assets in their current condition."  SOF ¶ 44.

Highland Video's interest in Bucktail. SOF ¶¶ 39-41; *see also* Government-Rigas Settlement Agreement ¶ 7 ("The ownership interest in Bucktail Broadcasting Corporation held by Highland Video Associates, L.P. shall be transferred to, or for the benefit of, members of the Rigas Family other than John J. Rigas or Timothy J. Rigas, prior to the entry of the Forfeiture Order.").  There was no similar carve out for the transfer of any assets of Highland Holdings, Highland Prestige, and Hilton Head and no other carve outs for the transfer of any assets of Highland Video.  SOF ¶ 42.  Thus, those entities, any wholly owned subsidiaries such as Highland Preferred, and all of their respective assets (including any alleged litigation rights) were pledged to the Government.

Notably, the Government-Rigas Settlement Agreement contained a complete integration clause:

> This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof. This Agreement shall not be modified, supplemented, amended or otherwise changed, or any of its provisions waived, in any manner whatsoever except by written instrument signed by the Parties.

SOF ¶ 43.

The Rigas family further agreed that the forfeiture of these entities would be effectuated by the consent order of forfeiture.  SOF ¶ 47.  Indeed, pursuant to a consent order of forfeiture entered by the district court on June 7, 2005, and a subsequent order of forfeiture entered on July 13, 2005, the Rigas family forfeited their interests in these entities to the Government "as property derived from and traceable to" offenses for which certain Rigases had been convicted. SOF ¶ 48.  Under the terms of the Government-Rigas Settlement Agreement, therefore, Highland Holdings, Highland Prestige, Highland Video, and Hilton Head—including all of their assets (such as Highland Preferred and any alleged litigation rights)—were pledged to the Government as of April 25, 2005, and, as of June 7, 2005, were formally forfeited to the Government.

There is no competent evidence to rebut the fact that Zito I does not have standing and, thus, that Deloitte is entitled to summary judgment.  Plaintiffs have not and cannot point to any provision in the Government-Rigas Settlement Agreement that held back the entities' litigation rights from forfeiture, or any written instrument signed by the parties to the Government-Rigas Settlement Agreement that purports to modify the Government-Rigas Settlement Agreement by excepting the same.  SOF ¶¶ 45, 46.

Plaintiffs have suggested that on June 3, 2005, prior to the entry of the Consent Order (which occurred on June 7, 2005), the alleged predecessor entities transferred—without any involvement, authorization, or signature of the U.S. Attorney's Office—to John Rigas, Michael Rigas, Timothy Rigas, James Rigas, and Ellen Rigas Venetis, "all assets not retained by [it] in order to comply with the Government-Rigas Settlement Agreement," and John Rigas, Michael Rigas, Timothy Rigas, James Rigas, and Ellen Rigas Venetis contemporaneously transferred those same assets to Zito I, L.P.[7]  *See* Plaintiffs' Responses to Deloitte's Requests For Admission, attached to Hoeffner Aff. as Ex. C, No. 4.  Those purported transfers are meaningless because all of their interests and assets at issue had already been pledged to the Government and had to be retained to comply with the Government-Rigas Settlement Agreement.  SOF ¶¶ 36, 44.[8]

---

[7] Plaintiffs point to one document entitled General Assignment of Assets that is signed by Michael Rigas as assignor and "accepted" by John, Timothy, Michael, James, and Ellen Rigas, in which Highland Holdings purported to transfer "any and all remaining interests" "other than those assets that must be retained by the Assignor to comply with the Government-Rigas settlement agreement" to the Rigas family.  Plaintiffs have not produced any similar document for the remaining alleged predecessors, but instead claim that they "exist somewhere" and that plaintiffs have "been unable to locate them."  SOF ¶ 49.

[8] Moreover, and as the Second Circuit has already expressly held with respect to Highland Holdings, the Rigases could not have transferred assets subject to the forfeiture agreement because, under the relation-back doctrine, the forfeiture occurs when the crime is committed," *In Re Century/ML Cable Venture*, 311 Fed. App'x 455, 457 (2d Cir. 2009) (citation omitted) (holding that alleged transfer of litigation rights from Highland Holdings to Zito I was invalid  because "Rigas family members could not have transferred an interest in [Highland Holdings] to Zito [I] in 2005 because they had been divested of their interest before that date"); *see also* 21 U.S.C. § 853(c) ("All right, title, and interest in [forfeited property] vests in the United States upon the commission of the act giving rise to their

In an effort to get around this issue, plaintiffs have argued that an Assistant U.S. Attorney assured them that they would be permitted to retain their litigation rights.  If necessary, Deloitte can and will prove that no such assurance or agreement was given or made.  However, plaintiffs' suggestion is in any event entirely irrelevant as a legal matter because the "parol evidence rule forbids proof of an oral agreement that might add to or vary the terms of a written contract that was intended to embody the entire agreement between the parties." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997) (citation omitted).  In this case, the terms of the Government-Rigas Settlement Agreement are clear, and the agreement contains a valid integration clause providing that any amendments to the agreement must be in writing.  SOF ¶ 43.  Accordingly, the parol evidence rule bars admission of any evidence relating to an alleged oral modification of this fully-integrated agreement.

The suggestion that an Assistant U.S. Attorney orally consented to the retention of certain assets by the Rigas family is also inconsistent with the limitations on the authority of an Assistant U.S. Attorney to bind the Government.   As the Government explained in the *Century/ML Cable Venture* appeal:

> Any deviation from the plain terms of [the Government-Rigas and Adelphia-Rigas Agreements] would have had to have been in writing, signed by a representative of the Government with actual authority to renegotiate the agreements. Because there is no such writing, and no person with actual authority to bind the Government consented to the transfer in any event, [Highland Holdings'] purported transfer of its claim at issue in this appeal to the Rigas family, and then to Zito [I], was invalid.

---

forfeiture"); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989); *United States v. United States Currency*, 895 F.2d 908, 916 (2d Cir. 1990); thus, the Rigases had no property interest in the forfeited assets as of the moment they committed their crimes, which dates back to at least 2000, *United States v. Rigas*, 490 F.3d 208, 215-16 (2d Cir. 2007) (describing criminal conduct dating back to 2000 for which members of Rigas family were convicted).  The same reasoning applies here to Highland Holdings and the other entities that Plaintiffs contend transferred interests to Zito I, which further demonstrates the lack of merit to plaintiffs' position.

Govt. App. Br. at *36, *In re Century/ML Cable Venture*, Nos. 07-4358-bk(L), 07-4627-bk(XAP), 2009 WL 6763695 (2d Cir. Jan. 15, 2009).[9]   That the Assistant U.S. Attorney would have lacked "actual authority to bind the Government" is yet another reason that any purported parol evidence relating to his alleged statements would be irrelevant to the question of whether certain rights were validly transferred.

For these reasons, plaintiff Zito I cannot establish a legally protected interest in the claims it asserts in this litigation and, therefore, Zito I lacks standing.   Accordingly, Deloitte is entitled to summary judgment on all of Zito I's claims.

**B.      James Rigas, Highland Holdings, and Highland Preferred Were Not in Privity With Deloitte and, Thus, Deloitte Is Entitled to Summary Judgment on Their Contract and Negligence Claims.**

There was no contractual relationship between Deloitte and James Rigas, Deloitte and Highland Holdings (an alleged predecessor to Zito I), or Deloitte and Highland Preferred (an alleged predecessor to Zito I).   SOF ¶¶ 8, 16.   As a result, James Rigas and those entities cannot maintain breach of contract or negligence (both professional negligence and negligent misrepresentation) claims against Deloitte.   Thus, Deloitte is entitled to summary judgment against James Rigas on all of his claims.   And, assuming *arguendo* that the Court does not resolve the standing issue against Zito I (which the Court should and which would resolve all of Zito I's claims), Deloitte is nonetheless entitled to summary judgment on all of Highland Holdings's and Highland Preferred's claims as asserted by Zito I.

---

[9] In *In Re Century/ML Cable Venture*, the U.S. Court of Appeals for the Second Circuit *sua sponte* raised the issue of Zito I's standing to assert a claim as a successor in interest to Highland Holdings and requested the view of the U.S. Attorney's Office for the Southern District of New York as to whether the claim of Highland Holdings had been validly transferred to Zito I pre-forfeiture.   The Government submitted a brief explaining (for reasons similar to those described above in text) that there had not been a valid transfer of interests.   The Second Circuit agreed, holding that the alleged transfer of litigation rights from Highland Holdings to Zito I was invalid and, thus, that Zito I lacked standing.   *In Re Century/ML Cable Venture*, 311 Fed. App'x 455, 457 (2d Cir. 2009).

1.      **Deloitte is entitled to summary judgment on their breach of contract claims.**

Under Pennsylvania law, to recover for a breach of contract, generally, the plaintiff must be a party to that contract. *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961) ("Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto.").

James Rigas has not established privity with Deloitte and, thus, he may not maintain his breach of contract claim. There is no evidence (and we are not aware) of any contract between James Rigas, as an individual, and Deloitte. In his deposition, James Rigas could not identify or otherwise describe any contract under which he engaged Deloitte to provide services directly to him as an individual. SOF ¶ 16. James Rigas further testified that his interactions with Deloitte were "very limited" or "extremely limited." *Id.* The summary judgment record is completely void of any contractual relationship between James Rigas and Deloitte. As a result, James Rigas cannot maintain a breach of contract claim against Deloitte and Deloitte is entitled to summary judgment.

Similarly, Zito I has not established the necessary privity for Highland Holdings and Highland Preferred to maintain a claim for breach of contract. It is undisputed that Highland Holdings and Highland Preferred were not parties to any contract with Deloitte. SOF ¶ 8. Indeed, Timothy Rigas explained that such a contractual relationship was not necessary "because there was no real audit requirement . . . so no one thought it was really necessary for Deloitte & Touche to . . . audit [them]." *Id.* The record is completely void of any relationship between Highland Holdings and Deloitte or Highland Preferred and Deloitte. As a result, Highland Holdings and Highland Preferred cannot maintain a breach of contract claim and Deloitte is entitled to summary judgment.

2.       **Deloitte is entitled to summary judgment on their negligence claims.**

Under Pennsylvania law, actions sounding in negligence against an accountant or auditor require the plaintiff to show privity of contract between the parties. *In re Phar-Mor, Inc. Securities Litig.*, 892 F. Supp. 676, 690 (W.D. Pa. 1995) (applying Pennsylvania law and holding "the absence of privity remains a bar to *any and all* claims against accountants founded in negligence."); *Landell v. Lybrand*, 107 A. 783, 783 (Pa. 1919) (affirming dismissal of claim against accountants for negligence because the plaintiff "was a stranger" to the accountants and, thus, "no duty rested upon" the accountants to plaintiff and they could not be guilty of negligence); *see also Phillips v. Cricket Lighters*, 841 A.2d 1000, 1006 (Pa. 2006) ("For parties to be considered to be in privity, a contractual relationship must exist between them.").  Further, when an engagement exists between an auditor and a company, the duties arising out of the engagement are owed to the company—"*not to the directors individually*."  *In re Phar-Mor*, 892 F. Supp. at 694 (emphasis added).

As discussed above, there is no evidence of privity between James Rigas and Deloitte and there is no dispute that James Rigas did not have a contractual relationship with Deloitte. Moreover, the law is clear that James Rigas cannot rely on his position as director or executive of any of the managed entities to confer privity. *In re Phar-Mor*, 892 F. Supp. at 694.  Nor is his position as a shareholder sufficient to establish privity.  *See, e.g.*, *Tredennick v. Bone*, 647 F. Supp. 2d 495 (W.D. Pa. 2007) (finding shareholder was not in privity with accounting firm). Because the summary judgment record is completely void of any evidence of the necessary relationship between James Rigas and Deloitte, James Rigas cannot maintain his negligence claims against Deloitte and Deloitte is entitled to summary judgment.

Also as discussed above, there is no evidence of privity between Highland Holdings and Deloitte and/or Highland Preferred and Deloitte and there is no dispute that Highland Holdings

13

and Highland Preferred did not have a contractual relationship with Deloitte.  As such, Zito I cannot maintain its negligence claims against Deloitte on behalf of Highland Holdings and Highland Preferred and Deloitte is entitled to summary judgment.

**C.    The Doctrine of *In Pari Delicto* Bars the Claims of Zito Media and, Thus, Deloitte is Entitled to Summary Judgment against Zito Media.**

This Court already has determined that the claims of former plaintiff John Rigas were barred by the doctrine of *in pari delicto* because he engaged in illegal conduct and his claims against Deloitte were grounded upon that same conduct.  (See Opinion, Dec. 27, 2013, at 11); *see also Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, and Cabot*, 458 A.2d 545, 552 (Pa. Super. Ct. 1983).   The claims asserted by Zito Media, as successor in interest to Coudersport, an entity wholly-owned and controlled by John Rigas, should also be dismissed for the same reasons.

Zito Media asserts its claims solely as a successor in interest to Coudersport.  SOF ¶ 1. Discovery has revealed (and it is undisputed) that John Rigas was the sole owner and controlling party of Coudersport at all times relevant.  SOF ¶¶ 2, 3.  Where, as here, the entity asserting the claims was wholly owned and controlled by one person, that entity is charged with the knowledge and conduct of its sole owner.  *See Official Comm. of Unsecured Creditors of Allegheny Health Educ. and Research Found. v. PricewaterhouseCoopers, LLP*, 989 A.2d 313, 331 (Pa. 2010) ("Were the action between a corporation controlled by a single individual and a sole-proprietor auditor, there would be a good case to be made that *in pari delicto* should apply to negate all causes of action arising out of intentional auditor misrepresentations made at the behest of the owner, and thus, with full corporate complicity."); *see also id.* at 333 ("[A]t least *in the absence of evidence of volitional wrongdoing on the part of AHERF's board of trustees*, attribution of the officers' misdoings to AHERF is a linchpin to PwC's assertion of an *in pari*

14

*delicto* defense" – *i.e.*, where company's controlling persons are themselves guilty of wrongdoing, *in pari delicto* defense is available without further consideration of imputation or attribution (emphasis added)); *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 359 (3d Cir. 2001) ("[T]he sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and . . . the corporation must bear the responsibility for allowing an agent to act without accountability."); *In re Mediators, Inc.*, 105 F.3d 822, 826, 827 (2d Cir. 1997) (The wrongdoer was the company's "sole shareholder and decision maker, and therefore whatever decisions he made were, by definition, authorized by, and made on behalf of, the corporation.").   Thus, Coudersport stands *in pari delicto* and Deloitte is entitled to summary judgment on all claims asserted by Zito Media.[10]

## V.   CONCLUSION

For the foregoing reasons, Deloitte respectfully requests that the Court grant Deloitte's Motion for Summary Judgment.

//

//

//

//

//

//

//

//

//

---

[10] Zito Media is the successor-in-interest to both Coudersport and Bucktail Broadcasting Corp.  Zito Media asserts claims in this litigation on behalf of only Coudersport.  SOF ¶ 1.

Dated: New York, NY
        March 31, 2014

Respectfully submitted,

/s/ Timothy E. Hoeffner
Timothy E. Hoeffner
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10022
P: 212.335.4500
F: 212.335.4501
timothy.hoeffner@dlapiper.com

Courtney G. Saleski
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

James E. Canning
**Cravath, Swaine & Moore LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Attorneys for Defendant*
*Deloitte & Touche LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for Deloitte & Touche LLP in this action and that, on March 31, 2014, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

<u>/s/ Timothy E. Hoeffner</u>
Timothy E. Hoeffner

17