**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | 03 MDL 01529 (JMF) |
| This Document Relates To:<br><br>*Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-02770) | |

**DEFENDANT DELOITTE AND TOUCHE LLP'S**
**ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant Deloitte & Touche LLP ("Deloitte"), through its attorneys, DLA Piper LLP (US), hereby submits this Answer to the Second Amended Complaint of plaintiffs James Rigas, Zito I, L.P. and Zito Media, L.P. (collectively "Plaintiffs") as follows:

1. Admitted in part; denied in part. Deloitte admits only that James Rigas is an individual, but lacks knowledge or information sufficient to admit or deny the allegations of the remaining averments of paragraph 1 and, on that basis, denies such allegations.

2. Denied. The allegations in paragraph 2 are legal conclusions, to which no response is required. To the extent that these allegations are deemed factual in nature, Deloitte lacks knowledge or information sufficient to admit or deny those averments, and, on that basis, denies such allegations.

3. Denied. The allegations in paragraph 3 are legal conclusions, to which no response is required. To the extent that these allegations are deemed factual in nature, Deloitte lacks knowledge or information sufficient to admit or deny those averments, and, on that basis, denies such allegations.

4. Admitted in part; denied in part. Deloitte admits only that it is a limited liability partnership organized under the laws of the state of Delaware. Deloitte otherwise denies the allegations contained in paragraph 4.

5. Denied. The allegations in paragraph 5 are legal conclusions to which no response is required, and to the extent a response is required, Deloitte denies those allegations.

6. Denied. The allegations in paragraph 6 are legal conclusions to which no response is required, and to the extent a response is required, Deloitte denies those allegations.

7. Denied. The allegations in paragraph 7 are legal conclusions to which no response is required, and to the extent a response is required, Deloitte denies those allegations.

8. Denied. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 8 and, on that basis, denies those allegations.

9. Denied. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 9 and, on that basis, denies those allegations.

10. Admitted in part; denied in part. Deloitte specifically admits only that James P. Rigas served in an executive position and was a member of the Board of Directors of Adelphia Communications Corporation ("Adelphia"). Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 10 and, on that basis, denies the allegations.

11. Admitted in part; denied in part. Deloitte specifically admits only that Timothy J. Rigas served in an executive position and was a member of the Board of Directors of Adelphia. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 11 and, on that basis, denies the allegations.

12. Admitted in part; denied in part. Deloitte specifically admits only that Michael J. Rigas served in an executive position and was a member of the Board of Directors of Adelphia. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 12 and, on that basis, denies those allegations.

13. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 13 and, on that basis, denies those allegations.

14. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 14 and, on that basis, denies those allegations.

15. Denied. Deloitte specifically denies that it "enticed" John Rigas to "switch to Deloitte by representing itself as having specialized knowledge of the cable industry and pledging that he would have access to all aspects of Deloitte's expertise." Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 15 and, on that basis, denies those allegations.

16. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 16 and, on that basis, denies those allegations.

17. Deloitte denies the allegations in paragraph 17.

18. Deloitte denies the allegations in paragraph 18.

19. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 19 and, on that basis, denies those allegations.

20. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 20 and, on that basis, denies those allegations.

21. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 21 and, on that basis, denies those allegations.

22. Deloitte denies the allegations in paragraph 22.

23. Deloitte denies the allegations in paragraph 23.

24. Deloitte denies the allegations in paragraph 24.

25. Deloitte denies the allegations in paragraph 25.

26. Deloitte denies the allegations in paragraph 26.

27. Deloitte denies the allegations in paragraph 27.

28. Deloitte denies the allegations in paragraph 28.

29. Admitted in part; denied in part. Deloitte specifically admits that Adelphia became a public company and, through a special Series of Class B voting stock (that had 10 times the voting power of the publicly traded Class A stock), the Rigases retained and held voting control of Adelphia. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 29 and, on that basis, denies those allegations.

30. Deloitte admits that all four of the Rigases served on Adelphia's Board of Directors at all times relevant to these claims.

31. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 31 and, on that basis, denies those allegations.

32. Admitted in part; denied in part. Deloitte admits only that the Rigases controlled privately-owned cable television companies and that it knew of certain management agreements between Adelphia and certain privately-owned cable companies managed by Adelphia, and that such arrangements were publicly disclosed by Adelphia in various public filings with the Securities and Exchange Commission (the "SEC"). The remaining allegations of paragraph 32 are denied.

33. Admitted in part; denied in part. Deloitte admits that the Rigas family owned several privately-held cable companies at various points in time. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 33 and, on that basis, denies those allegations.

34. Admitted in part; denied in part. Deloitte admits only that Deloitte knew that certain management services that Adelphia provided to the Rigas entities were set forth in various agreements, including a "Form of Management Agreement for Managed Companies," which was publicly filed with the SEC. The remaining allegations of paragraph 34 are denied.

35. Denied. To the extent that the allegations in paragraph 35 rely on management agreements, those agreements are writings that speak for themselves, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 35 and, on that basis, denies those allegations.

36. Admitted in part; denied in part. Deloitte admits only that Deloitte knew that certain management services that Adelphia provided to the Rigas entities were set forth in various agreements, including a "Form of Management Agreement for Managed Companies," which was publicly filed with the SEC. To the extent that the allegations in paragraph 36 rely on management agreements, the agreements are writings that speak for themselves, and any characterization of same is denied. By way of further answer, Deloitte further admits that Deloitte provided auditing services to Adelphia and refers to the engagement letters between Adelphia and Deloitte for the terms of the engagement. To the extent that the allegations of paragraph 36 have not been admitted, they are denied.

37. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 37 and, on that basis, denies those allegations.

38. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 38 and, on that basis, denies those allegations.

39. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 39 and, on that basis, denies those allegations.

40. Denied. The allegations of paragraph 40 are legal conclusions to which no response is required. Deloitte specifically denies that it understood that "Adelphia, the Rigases and the RFPs were inextricably intertwined given the multitude of related party transactions among them." To the extent the allegations in paragraph 40 are deemed factual in nature, they are denied.

41. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 41 and, on that basis, denies those allegations.

42. Deloitte denies the allegations in paragraph 42 that Adelphia lacked employees with accounting experience and Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 42 with respect to the Rigases lack of accounting degrees and, on that basis, they are denied.

43. Deloitte denies the allegations in paragraph 43.

44. Admitted in part; denied in part. Deloitte admits that Adelphia was responsible for keeping clear and detailed books and records. The remaining allegations in paragraph 44 are denied.

45. Denied. To the extent the allegations in paragraph 45 rely on engagement letters, the letters are writings that speak for themselves, and any characterization of the same is denied.

46. Admitted in part; denied in part. Deloitte admits that it issued audit opinions on certain financial statements of Adelphia and certain entities owned by the Rigas Family. The remaining allegations in paragraph 46 are denied.

47. Denied. To the extent that the allegations in paragraph 47 rely on engagement letters, the letters are writings that speak for themselves, and any characterization of the same is denied.

48. Deloitte denies the allegations in paragraph 48.

49. Denied. To the extent that the allegations in paragraph 49 rely on Generally Accepted Auditing Standards ("GAAS"), the standards are writings that speak for themselves, and any characterization of the same is denied.

50. Admitted in part; denied in part. Deloitte admits that it issued unqualified audit opinions on certain financial statements of Adelphia and certain entities owned by the Rigas Family. The remaining allegations in paragraph 50 are denied.

51. Deloitte denies the allegations in paragraph 51.

52. Denied. To the extent that the allegations in paragraph 52 rely on GAAS, the standards are writings that speak for themselves, and any characterization of the same is denied.

53. Deloitte denies the allegations in paragraph 53.

54. Denied. To the extent that the allegations in paragraph 54 rely on GAAS, the standards are writings that speak for themselves, and any characterization of the same is denied. The remaining allegations in paragraph 54 are denied.

55. Denied. To the extent that the allegations in paragraph 55 rely on engagement letters, the letters are writings that speak for themselves, and any characterization of same is denied.

56. Denied, except Deloitte admits that Deloitte communicated from time to time with Adelphia's employees in accordance with professional standards.

57. Deloitte denies the allegations in paragraph 57.

58. Denied, except Deloitte admits that Deloitte communicated with Adelphia's employees as needed in accordance with professional standards.

59. Admitted in part; denied in part. Deloitte admits that it conducted quarterly reviews in accordance with the terms of various engagement letters between Adelphia and Deloitte, and that in performing these reviews Deloitte acted in accordance with GAAS. To the extent that the allegations in paragraph 59 rely on engagement letters, the letters are writings that speak for themselves, and any characterization of same is denied. Further, to the extent that the allegations in paragraph 59 have not been admitted, they are denied.

60. Denied. To the extent that the allegations in paragraph 60, and all subparts thereto, rely on engagement letters, the letters are writings that speak for themselves, and any characterization of same is denied.

61. Denied. To the extent that the allegations in paragraph 61 are based on Deloitte's Audit Planning memoranda, these memoranda are writings that speak for themselves, and any characterization of same is denied.

62. Denied. To the extent that the allegations in paragraph 62 are based on Deloitte's Audit Planning memoranda, these memoranda are writings that speak for themselves, and any characterization of same is denied.

63. Admitted in part; denied in part. Deloitte admits that at certain times, Adelphia was included in Deloitte's risk management program and Deloitte planned and performed its

audits taking this determination into consideration. The remaining allegations of paragraph 63 are denied.

64. Denied, except Deloitte admits that it performed audits in conformity with professional standards. To the extent that the allegations in paragraph 64 are based on Deloitte's Audit Planning memoranda, these memoranda are writings that speak for themselves, and any characterization of same is denied.

65. Denied, except Deloitte admits that it performed audits in conformity with professional standards. To the extent that the allegations in paragraph 65 are based on Deloitte's Audit Planning memoranda, these memoranda are writings that speak for themselves, and any characterization of same is denied.

66. Denied, except Deloitte admits that it performed audits in conformity with professional standards. To the extent that the allegations in paragraph 66 are based on Deloitte's Audit Planning memoranda, these memoranda are writings that speak for themselves, and any characterization of same is denied.

67. Deloitte denies the allegations in paragraph 67.

68. Denied, except Deloitte admits that at certain points during its engagement, it provided certain tax services to Adelphia.

69. Denied, except Deloitte admits that Deloitte audit team members performed aspects of the audit at Adelphia's headquarters in Coudersport, Pennsylvania and the payments received for these services are set forth in invoices for services performed.

70. Deloitte denies the allegations in paragraph 70.

71. Denied, except Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's Initial Public Offering ("IPO"), which

financial statements were the responsibility of Adelphia's management. As such, Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia to determine whether the financial statements were presented fairly, in all material respects, in conformity with Generally Accepted Accounting Principles ("GAAP").

72. Deloitte denies the allegations in paragraph 72. Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's IPO. As such, Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

73. Deloitte denies the allegations in paragraph 73. Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's IPO. As reflected in the terms of the engagement letters with Adelphia, the financial statements of Adelphia were the responsibility of Adelphia management.

74. Deloitte denies the allegations in paragraph 74. Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's IPO. As reflected in the terms of the engagement letters with Adelphia, the financial statements of Adelphia were the responsibility of Adelphia management.

75. Deloitte denies the allegations in paragraph 75. Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's IPO. As reflected in the terms of the engagement letters with Adelphia, the financial statements of Adelphia were the responsibility of Adelphia management.

76. Deloitte denies the allegations in paragraph 76, except it admits that Deloitte's audits of Adelphia's financial statements were conducted in accordance with professional standards.

77. Deloitte denies the allegations in paragraph 77. Deloitte states that it was engaged by Adelphia to audit Adelphia's financial statements in connection with Adelphia's IPO. As reflected in the terms of the engagement letters with Adelphia, the financial statements of Adelphia were the responsibility of Adelphia management.

78. Deloitte denies the allegations in paragraph 78.

79. Deloitte denies the allegations in paragraph 79. As reflected in the terms of the engagement letters with Adelphia, the financial statements of Adelphia were the responsibility of Adelphia management.

80. Deloitte denies the allegations in paragraph 80.

81. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 81 and, on that basis, denies those allegations.

82. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 82 and, on that basis, denies those allegations.

83. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 83 and, on that basis, denies these allegations.

84. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 84 and, on that basis, denies those allegations.

85. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 85 and, on that basis, denies those allegations.

86. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 86 and, on that basis, denies those allegations.

87. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 87 and, on that basis, denies those allegations.

88. Denied. To the extent that the allegations contained in paragraph 88 rely on the 1996 Letter Agreement, the agreement is a writing that speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 88 and, on that basis, denies those allegations.

89. Denied. To the extent that the allegations contained in paragraph 89 rely on the 1996 Letter Agreement, the agreement is a writing that speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 89 and, on that basis, denies those allegations.

90. Denied. To the extent that the allegations in Paragraph 90 rely on the 1996 Co-Borrowing Agreement, the agreement is a writing that speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in Paragraph 90 and, on that basis, denies those allegations.

91. Denied, except Deloitte admits that, in the course of conducting certain audits, certain members of its audit team reviewed the 1996 Co-Borrowing Agreement and gained a sufficient understanding of the agreement in accordance with professional standards.

92. Denied, except Deloitte admits that in the course of conducting certain audits, certain members of its audit team reviewed the 1996 Co-Borrowing Agreement and gained a sufficient understanding of it in accordance with professional standards, and that for certain years, Chet Hobert was a Concurring Reviewer with regard to Deloitte's audit of the financial statements of Adelphia.

93. Denied, except Deloitte admits that for certain years, Chet Hobert was a Concurring Reviewer with regard to Deloitte's audit of the financial statements of Adelphia.

94. Denied. Deloitte denies the allegations in paragraph 94, except admits that, in the course of conducting certain audits, certain members of its audit team reviewed the 1996 Co-Borrowing Agreement and gained a sufficient understanding of it in accordance with professional standards.

95. Denied. To the extent that the allegations in paragraph 95 rely on the 1996 Co-Borrowing Agreement, the agreement is a writing that speaks for itself, and any characterization of same is denied.

96. Admitted in part; denied in part. Deloitte states that Adelphia's management was responsible for the preparation of Adelphia's financial statements and accounting for transactions relating to the co-borrowing agreements. Deloitte specifically admits that it performed an analysis of the 1996 Co-Borrowing Agreement pursuant to FAS 5, which demonstrated that it was not probable that Adelphia would have to pay the debt of the Rigas co-borrowers based, in part, on the ability of the Managed Entities, the Rigases and the RFPs to repay the obligations under the Co-Borrowing Agreements. The remaining allegations of paragraph 96 are denied.

97. Denied. To the extent that the allegations in paragraph 97 rely on the 1996 Co-Borrowing Agreement, the agreement is a writing that speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte denies the allegations in paragraph 97.

98. Admitted in part; denied in part. Deloitte specifically admits that, in the course of conducting certain audits, it reviewed the 1996 Co-Borrowing Agreement and gained a sufficient understanding of it in accordance with professional standards. Deloitte denies the remaining allegations in paragraph 98.

99. Admitted.

100. Admitted.

101. Admitted.

102. Admitted.

103. Denied. The allegations in paragraph 103 rely on the 1996, 1999, 2000, and 2001 Co-Borrowing Agreements, which are writings that speak for themselves, and any characterization of same is denied.

104. Denied. The allegations in paragraph 104 rely on a Co-Borrowing Agreement, which is a writing that speaks for itself, and any characterization of same is denied. Deloitte specifically denies that it determined any accounting treatment alleged in paragraph 104. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in Paragraph 104 and, on that basis, denies those allegations.

105. Denied. Deloitte states that Adelphia's management was responsible for the preparation of Adelphia's financial statements. Deloitte, in accordance with the terms of the engagement Letters with Adelphia, audited the financial statements of Adelphia and the co-

borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

106. Denied. Deloitte states that Adelphia's management was responsible for the preparation of Adelphia's financial statements. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and the co-borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

107. Denied. The allegations in paragraph 107 are legal conclusions to which no response is required. To the extent that a response is required, they are denied.

108. Deloitte denies the allegations in paragraph 108. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and the co-borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

109. Deloitte denies the allegations in paragraph 109.

110. Deloitte denies the allegations in paragraph 110. Deloitte further denies that Adelphia provided accurate and complete information to the Deloitte audit team, either pursuant to such a request or otherwise.

111. Denied. The allegations contained in paragraph 111 are legal conclusions, to which no response is required. To the extent that these allegations are deemed factual in nature, these allegations are denied. Deloitte further states that Adelphia's management was responsible for the preparation of Adelphia's SEC filings and the determination of appropriate disclosures in those filings.

112. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 112 and, on that basis, denies those allegations.

113. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 113 and, on that basis, denies those allegations.

114. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 114 and, on that basis, denies those allegations. Deloitte further states that the Use of Proceeds sections in the 1996 and 1999 Co-Borrowing Agreements made no reference to the purchase of Adelphia securities by the Rigas Family.

115. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 115 and, on that basis, denies those allegations, except admits that in 2002 Deloitte learned of information suggesting that the Rigases purchased Adelphia securities with funds drawn from certain Co-Borrowing Agreements.

116. Denied, except Deloitte admits that in 2002, Deloitte learned of information suggesting that the Rigases purchased Adelphia securities with funds drawn from certain co-borrowing agreements.

117. Deloitte denies the allegations in paragraph 117. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and the co-borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

118. Deloitte denies the allegations in paragraph 118. Deloitte states that Adelphia's management was responsible for the preparation of Adelphia's financial statements and accounting for transactions relating to the co-borrowing agreements. Deloitte specifically admits that it performed an analysis pursuant to FAS 5, which demonstrated that it was not probable that

Adelphia would have to pay the debt of Rigas co-borrowers based, in part, on the ability of the Managed Entities, the Rigases and other RFPs to repay the obligations under the Co-Borrowing Agreements.

119. The allegations in paragraph 119 rely on Deloitte's audit workpapers, which are writings that speak for themselves, and any characterization of same is denied.

120. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 120 and, on that basis, denies those allegations.

121. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 121, as stated, and, on that basis, denies those allegations.

122. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 122 and, on that basis, denies those allegations.

123. Deloitte denies the allegations contained in paragraph 123.

124. Denied, except Deloitte admits that certain marketing support agreements were contained in Deloitte's 2000 workpapers. The audit workpapers are writings that speak for themselves, and any characterization of same is denied.

125. Deloitte denies the allegations in paragraph 125. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and certain of the co-borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP.

126. Denied. The allegations of paragraph 126 are legal conclusions to which no response is required. To the extent the allegations in paragraph 126 are deemed factual in nature, the referenced guidance constitutes writings that speak for themselves, and any characterization of same is denied.

127. Denied. The allegations of paragraph 127 are legal conclusions to which no response is required. To the extent that they are deemed factual in nature, the referenced guidance and public filings are writings that speak for themselves, and any characterization of same is denied.

128. Denied. Deloitte denies the allegations in paragraph 128. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and the co-borrowing groups to determine whether the financial statements were presented fairly, in all material respects, in conformity with GAAP. In the course of performing services for Adelphia, in certain instances, Deloitte reviewed SEC comment letters and responses thereto prepared by Adelphia management and their legal counsel. Deloitte otherwise denies the allegations of paragraph 128 of the Second Amended Complaint.

129. Deloitte denies the allegations in paragraph 129.

130. Deloitte denies the allegations in paragraph 130.

131. Denied, except Deloitte admits that certain members of Adelphia management and Deloitte representatives made a presentation to the Adelphia Audit Committee on February 28, 2002, during which a number of topics were discussed, including the co-borrowing disclosure.

132. Denied, except Deloitte admits that Deloitte representatives met with the Adelphia Audit Committee on February 28, 2002 and that the on-going audit was discussed during that meeting.

133. Denied, except Deloitte admits that Deloitte representatives met with the Adelphia Audit Committee on February 28, 2002 and that the on-going audit was discussed during that meeting.

134. Deloitte denies the allegations in paragraph 134. To the extent that the allegations contained in paragraph 134 rely on Deloitte's workpapers, those workpapers are writings that speak for themselves, and any characterization of same is denied.

135. Denied, except Deloitte admits that in February 2002, Deloitte was first made aware that co-borrowed funds were used to fund at least a portion of the October 2001 Rigas purchase of Adelphia securities.

136. Deloitte denies the allegations in paragraph 136. Deloitte states that Adelphia's management was responsible for the preparation of Adelphia's financial statements and accounting for transactions relating to the co-borrowing agreements. Deloitte specifically admits that it performed an analysis pursuant to FAS 5, which demonstrated that it was not probable that Adelphia would have to pay the debt of Rigas co-borrowers based, in part, on the ability of the Managed Entities, the Rigases and RFPs to repay the obligations under the Co-Borrowing Agreements.

137. Denied, except Deloitte admits that in certain circumstances audit firms provide management letters in accordance with professional standards.

138. Denied, except Deloitte admits that from 1995-2002, the relevant time period for this action, Deloitte did not issue a formal management letter to Adelphia.

139. Deloitte denies the allegations in paragraph 139.

140. Admitted in part; denied in part. Deloitte admits only that Adelphia issued a press release on March 27, 2002. To the extent that the allegations contained in paragraph 140 rely upon the March 27, 2002 press release, the press release is a writing that speaks for itself and any characterization of same is denied.

141. Deloitte denies the allegations in paragraph 141.

142. Deloitte denies the allegations in paragraph 142, as stated.

143. Admitted.

144. Deloitte denies the allegations in paragraph 144.

145. Deloitte denies the allegations in paragraph 145.

146. Deloitte denies the allegations in paragraph 146.

147. Deloitte denies the allegations in paragraph 147.

148. Deloitte denies the allegations in paragraph 148.

149. Deloitte denies the allegations in paragraph 149.

150. Deloitte denies the allegations in paragraph 150.

151. Denied. The allegations in paragraph 151 contain legal conclusions to which no response is required. To the extent that paragraph 151 contains factual averments, those allegations are denied.

152. Admitted in part; denied in part. Deloitte specifically admits only that Adelphia did not issue its Form 10-K for the period ending December 31, 2001 and that its shares were delisted by NASDAQ in June of 2002. The remaining allegations in paragraph 152 are denied.

153. Deloitte denies the allegations in paragraph 153.

154. Denied. The allegations contained in paragraph 154 are legal conclusions to which no response is required, and to the extent a response is required, Deloitte denies those allegations.

155. Admitted.

156. Denied. The allegations in paragraph 156 are legal conclusions to which no response is required, and to the extent a response is required, Deloitte denies those allegations.

157. Deloitte denies the allegations in paragraph 157.

158. Deloitte denies the allegations in paragraph 158.

159. Admitted.

160. Admitted.

161. Deloitte denies the allegations in paragraph 161, except admits that the criminal indictment and trial transcripts are written documents that speak for themselves, and any characterization of same is denied.

162. Denied, except Deloitte admits that the criminal trial transcripts are written documents that speak for themselves, and any characterization of same is denied.

163. Denied, except Deloitte admits that the criminal trial transcripts are written documents that speak for themselves, and any characterization of same is denied.

164. Denied, except Deloitte admits that the transcript of the January 23, 2006 SEC hearing is a written document that speaks for itself, and any characterization of same is denied.

165. Deloitte denies the allegations in paragraph 165.

166. Deloitte denies the allegations in paragraph 166.

167. Deloitte denies the allegations in paragraph 167.

168. Admitted in part; denied in part. Deloitte specifically admits only that John Rigas and Timothy Rigas were convicted of crimes including conspiracy to commit securities fraud, conspiracy to make and cause to be made false statements in filings with the SEC, and conspiracy to commit bank fraud; securities fraud; and bank fraud in July of 2004. The remaining allegations in paragraph 168 are denied.

169. Deloitte lacks information sufficient to admit or deny the allegations in paragraph 169 and, on that basis denies those allegations.

170. Denied. Deloitte specifically denies that its conduct was "improper" in any manner and/or caused the damages alleged. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 170 and, on that basis, denies the allegations.

171. Admitted in part; denied in part. Deloitte specifically admits that John Rigas and Timothy Rigas were convicted of crimes including: conspiracy to commit securities fraud; conspiracy to make and cause to be made false statements in filings with the SEC; conspiracy to commit bank fraud; securities fraud; and bank fraud. Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 171 and, on that basis, denies those allegations.

172. Denied. To the extent the allegations in paragraph 172 rely on a settlement agreement, that agreement is understood to be a writing, which speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 172 and, on that basis, denies those allegations.

173. Denied. To the extent the allegations in paragraph 173 rely on a settlement agreement, that agreement is understood to be a writing, which speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 173 and, on that basis, denies those allegations.

174. Denied. To the extent the allegations in paragraph 174 rely on a settlement agreement, that agreement is understood to be a writing, which speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information

sufficient to admit or deny the remaining allegations contained in paragraph 174 and, on that basis, denies those allegations.

175. Admitted in part; denied in part. Deloitte specifically admits only that a document identified as a General Assignment of Assets, dated June 3, 2005, was attached as Exhibit "A" to the Second Amended Complaint. To the extent the allegations in paragraph 175 rely on General Assignments of Assets, those assignments are writings, which speak for themselves, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 175 and, on that basis, denies those allegations.

176. Admitted in part; denied in part. Deloitte specifically admits only that a document identified as a Contribution and Assignment, dated June 3, 2005, was attached as Exhibit "B" to the Second Amended Complaint. To the extent the allegations in paragraph 176 rely on this or any agreement of Contribution and Assignment, this agreement is a writing which speaks for itself, and any characterization of same is denied. By way of further answer, Deloitte lacks information sufficient to admit or deny the remaining allegations contained in paragraph 176 and, on that basis, denies those allegations.

177. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 177 and, on that basis, denies those allegations.

178. Deloitte lacks information sufficient to admit or deny the allegations contained in paragraph 178 and, on that basis, denies those allegations.

179. Deloitte denies the allegations in paragraph 179.

## COUNT I
## BREACH OF CONTRACT

180. This paragraph of Plaintiffs' Second Amended Complaint is a paragraph of incorporation, to which no responsive pleading is required. Deloitte hereby incorporates its responses to paragraphs 1-179 above, as if incorporated herein.

181. Denied. To the extent that the allegations in paragraph 181 rely on engagement letters, the letters are writings that speak for themselves, and any characterization of the same is denied.

182. Deloitte denies the allegations in paragraph 182.

183. Deloitte denies the allegations in paragraph 183.

184. Admitted in part; denied in part. Deloitte specifically admits only that it audited certain financial statements of Adelphia and certain entities owned by the Rigas Family. To the extent that the allegations in paragraph 184 rely on engagement letters, those letters are writings that speak for themselves, and any characterization of the same is denied. The remaining allegations in paragraph 184 are denied.

185. Admitted in part; denied in part. Deloitte specifically admits only that it was party to contracts with certain entities owned by the Rigas Family. To the extent that the allegations in paragraph 185 rely on engagement letters, those letters are writings that speak for themselves, and any characterization of the same is denied. The remaining allegations in paragraph 185 are denied.

186. Admitted in part; denied in part. Deloitte specifically admits only that it audited certain financial statements of Adelphia and certain entities owned by the Rigas Family. To the extent that the allegations in paragraph 186 rely on engagement letters, those letters are writings

that speak for themselves, and any characterization of the same is denied. The remaining allegations in paragraph 186 are denied.

187. Deloitte denies the allegations in paragraph 187.

188. Denied. To the extent that the allegations in paragraph 188 rely on engagement letters, those letters are writings that speak for themselves, and any characterization of the same is denied.

189. Deloitte denies the allegations in paragraph 189.

190. Denied. To the extent that the allegations in paragraph 190 rely on engagement letters, those letters are writings that speak for themselves, and any characterization of the same is denied.

191. Denied. To the extent that the allegations in paragraph 191 rely on engagement letters, those letters are writings that speak for themselves, and any characterization of the same is denied.

192. Deloitte denies the allegations in paragraph 192.

193. Deloitte denies the allegations in paragraph 193.

194. Denied. The allegations contained in paragraph 194 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

195. Admitted in part; denied in part. Deloitte specifically admits only that Adelphia did not issue its Form 10-K for the period ending December 31, 2001 and that its shares were delisted by NASDAQ in June of 2002. The remaining allegations in paragraph 195 are denied.

196. Deloitte denies the allegations in paragraph 196.

197. Denied. The allegations in paragraph 197 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations. Deloitte specifically denies that it failed to conduct its audits in accordance with GAAS.

198. Denied. The allegations in paragraph 198 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations. Deloitte specifically denies that it breached any contract with Plaintiffs.

199. Deloitte denies the allegations in paragraph 199.

**COUNT II**
**BREACH OF PROFESSIONAL DUTY**

200. This paragraph of Plaintiffs' Second Amended Complaint is a paragraph of incorporation, to which no responsive pleading is required. Deloitte hereby incorporates its responses to paragraphs 1 through 199 above, as if incorporated herein.

201. Admitted in part; denied in part. Deloitte admits that it provides certain accounting and auditing services, amongst others. The remaining allegations in paragraph 201 are denied.

202. Denied. The allegations contained in paragraph 202 are legal conclusions to which no response is required. To the extent that the allegations rely on engagement letters, the letters are writings that speak for themselves, and any characterization of same is denied. The remaining allegations in paragraph 202 are denied.

203. Denied. The allegations contained in paragraph 203 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

204. Denied. The allegations contained in paragraph 204 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

205. Denied. The allegations contained in paragraph 205 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

206. Deloitte denies the allegations in paragraph 206.

207. Denied. The allegations contained in paragraph 207 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

208. Denied. The allegations contained in paragraph 208 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

209. Denied. The allegations contained in paragraph 209 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

210. Denied. The allegations contained in paragraph 210 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

211. Deloitte denies the allegations in paragraph 211.

212. Denied. The allegations contained in paragraph 212 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

213. Denied. The allegations contained in paragraph 213 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

214. Deloitte denies the allegations in paragraph 214.

215. Denied. Deloitte denies the allegations in paragraph 215, including the allegation that any such representation regarding the 2001 audit was made to Adelphia by Deloitte or that any Adelphia press release was "based on" such a representation.

216. Deloitte denies the allegations in paragraph 216, including the allegation that any such representation was made to Adelphia or that Deloitte made "other assurances in March 2002 that there were no significant issues with the Adelphia 10-K for 2001."

217. Deloitte denies the allegations in paragraph 217.

218. Denied. The allegations in paragraph 218 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations, including specifically, any allegation that Deloitte's conduct was in any way wrongful, without justification, or in violation of any duties.

219. Admitted in part; denied in part. Deloitte specifically admits only that Adelphia did not issue its Form 10-K for the period ending December 31, 2001 and that its shares were delisted by NASDAQ in June of 2002. The remaining allegations in paragraph 219 are denied.

220. Deloitte denies the allegations in paragraph 220.

221. Denied. The allegations contained in paragraph 221 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

222. Denied. The allegations contained in paragraph 222 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations. Deloitte specifically denies that it breached any contract with Plaintiffs.

223. Deloitte denies the allegations in paragraph 223.

224. Denied. The allegations contained in paragraph 224 are legal conclusions to which no response is required and, to the extent a response is required, Deloitte denies those allegations.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**

225. This paragraph of Plaintiffs' Second Amended Complaint is a paragraph of incorporation, to which no responsive pleading is required. Deloitte hereby incorporates its responses to paragraphs 1 through 224 above, as if incorporated herein.

226. Deloitte denies the allegations in paragraph 226. Deloitte, in accordance with the terms of the engagement letters with Adelphia, audited the financial statements of Adelphia and the co-borrowing groups in accordance with professional standards.

227. Deloitte denies the allegations in paragraph 227.

228. Deloitte denies the allegations in paragraph 228.

229. Deloitte denies the allegations in paragraph 229.

230. Denied. The allegations in paragraph 230 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

231. Denied. The allegations in paragraph 231 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

232. Denied. The allegations in paragraph 232 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

233. Denied. The allegations in paragraph 233 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

234. Denied. The allegations in paragraph 234 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

235. Denied. The allegations in paragraph 235 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

236. Deloitte denies the allegations in paragraph 236.

237. Denied. The allegations in paragraph 237 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

238. Deloitte denies the allegations in paragraph 238.

239. Deloitte denies the allegations in paragraph 239, including the allegation that any such representation regarding the 2001 audit was made to Adelphia by Deloitte or that any Adelphia press release was "based on" such a representation.

240. Deloitte denies the allegations in paragraph 240, including the allegation that any such representation was made to Adelphia or that Deloitte made "other assurances in March 2002 that there were no significant issues with the Adelphia 10-K for 2001."

241. Deloitte denies the allegations in paragraph 241.

242. Denied. The allegations in paragraph 242 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations, including specifically, any allegation that Deloitte's conduct was in any way wrongful, without justification, or in violation of any duties.

243. Admitted in part; denied in part. Deloitte specifically admits only that Adelphia did not issue its Form 10-K for the period ending December 31, 2001 and that its shares were delisted by NASDAQ in June of 2002. The remaining allegations in paragraph 243 are denied.

244. Deloitte denies the allegations in paragraph 244.

245. Denied. The allegations in paragraph 245 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

246. Denied. The allegations in paragraph 246 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations. Deloitte specifically denies that it breached any contract with Plaintiffs.

247. Deloitte denies the allegations in paragraph 247.

248. Denied. The allegations in paragraph 248 are legal conclusions to which no response is required. To the extent a response is required, Deloitte denies those allegations.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of Deloitte and without conceding that it bears the burden of proof on any of the following defenses, Deloitte asserts the following defenses to the Plaintiffs' Second Amended Complaint.

## FIRST DEFENSE

Plaintiffs' remaining claims are barred, in whole or in part, because they fail to state a claim against Deloitte upon which relief may be granted.

## SECOND DEFENSE

Plaintiffs lack standing to assert the remaining claims against Deloitte.

**THIRD DEFENSE**

Plaintiffs' remaining claims are barred, in whole or in part, by the statutes of limitations or repose, or are otherwise time-barred.

**FOURTH DEFENSE**

Plaintiffs' remaining claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

**FIFTH DEFENSE**

Plaintiffs' remaining claims fail because the conduct of Adelphia management and/or others was/were an intervening and/or superseding cause of any damage, loss, or injury sustained by plaintiffs.

**SIXTH DEFENSE**

Plaintiffs' remaining claims are barred in whole or in part because the actions of Adelphia's management constitute contributory negligence that should be imputed to each of the Plaintiffs.

**SEVENTH DEFENSE**

Plaintiffs' remaining claims are barred because Plaintiffs cannot establish the privity necessary for such claims.

**EIGHTH DEFENSE**

Plaintiffs' remaining claims are barred in whole or in part because Deloitte reasonably and justifiably relied on the advice or information provided by others, including Adelphia management.

**NINTH DEFENSE**

Plaintiffs' remaining claims are barred in whole or in part because at all times Deloitte performed its obligations under the relevant engagement letters.

Deloitte reserves the right to assert additional affirmative and other defenses as may be established by discovery and the evidence in this case.

Dated: April 14, 2014
New York, New York.

Respectfully submitted,

/s/ Timothy E. Hoeffner

By: Timothy E. Hoeffner (TH-4195)
timothy.hoeffner@dlapiper.com
**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
T: 212-335-4500
F: 212-335-4501

Courtney G. Saleski (*Pro Hac Vice*)
courtney.saleski@dlapiper.com
**DLA Piper LLP (US)**
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: 215-656-3300

-and-

Antony L. Ryan
James E. Canning
**Cravath, Swaine & Moore LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
T: 212-474-1000

*Attorneys for Defendant*
*Deloitte & Touche LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2014, I caused a true and correct copy of the foregoing to be served electronically as follows:

Christie C. Comerford
John J. Higson
Lawrence G. McMichael
**Dilworth Paxson LLP**
1500 Market Street
Suite 3500 E
Philadelphia, PA 19102-2101

s/ Timothy E. Hoeffner
Timothy E. Hoeffner