UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | 03 MDL 1529 (JMF) |
| This Document Relates To:<br><br>*Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-2770) | |

# DELOITTE & TOUCHE LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Timothy E. Hoeffner
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
T:  212-335-4500
F:  212-335-4501

Courtney G. Saleski
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T:  215-656-2431
F:  215-656-3301

James E. Canning
**Cravath, Swaine & Moore LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
T:  212-474-1000
F:  212-474-3700

*Attorneys for Defendant
Deloitte & Touche LLP*

## TABLE OF CONTENTS

                                                                                                           **Page**

I.     Zito I Cannot Establish That It Has Standing. ................................................................... 1

II.    Deloitte Is Entitled to Summary Judgment on the Contract and Negligence Claims of James Rigas, Highland Holdings, and Highland Preferred. .......................................... 5

III.   The Doctrine of *In Pari Delicto* Bars the Claims of Zito Media. ..................................... 9

IV.   Conclusion ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Altoona City Auth. v. L. Robert Kimball & Assocs.*,
  26 Pa. D. & C. 4th 521 (Com. Pl. 1995) ................................................................................7

*Atkinson v. Haug*,
  622 A.2d 983 (Pa. Super. 1993) ............................................................................................7

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*,
  866 A.2d 270 (Pa. 2005) .................................................................................................8, 9

*Brandow Chrysler Jeep Co. v. DataScan Tech.*,
  511 F. Supp. 2d 529 (E.D. Pa. 2007) ....................................................................................8

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) ..................................................................................................2

*Coleco Indus., Inc. v. Berman*,
  423 F. Supp. 275 (E.D. Pa. 1976) .........................................................................................8

*Evans v. Otis Elevator Co.*,
  168 A.2d 573 (Pa. 1961) .......................................................................................................5

*Guy v. Liederbach*,
  459 A.2d 744 (Pa. 1983) .......................................................................................................8

*Happy Dack Trading Co., Ltd. v. Agro-Indus., Inc.*,
  602 F. Supp. 986 (S.D.N.Y. 1984) .......................................................................................4

*In re Adelphia Comms. Corp.*,
  365 B.R. 24 (Bankr. S.D.N.Y. 2007) ..................................................................................10

*In re Dreier LLP*,
  429 B.R. 112 (Bankr. S.D.N.Y. 2010) ..................................................................................5

*In re Phar-Mor, Inc. Secs. Litig.*,
  892 F. Supp. 676 (W.D. Pa. 1995) ................................................................................5, 6, 9

*Koken v. Steinberg*,
  825 A.2d 723 (Pa. Commw. Ct. 2003) .................................................................................7

*Lackner v. Glossner*,
  892 A.2d 21 (Pa. Super. Ct. 2006) ....................................................................................5, 6

## TABLE OF AUTHORITIES
(continued)

Page

*Mancuso v. Consol. Edison Co. of New York*,
    130 F. Supp. 2d 584 (S.D.N.Y. 2001) ............................................................................... 5

*Mfrs. Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) ................................................................................................. 4

*Official Comm. Of Unsecured Credits of Allegheny Health Educ. and Research Found. v.
    PricewaterhouseCoopers, LLP*,
    989 A.2d 313 (Pa. 2010) ............................................................................................ 9, 10

*Premium Mort. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) ............................................................................................. 5

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ............................................................................................... 4

*Rottmund v. Continental Assurance Co.*,
    761 F. Supp. 1203 (E.D. Pa. 1990) .................................................................................. 6

*Scarpitti v. Weborg*,
    609 A.2d 147 (Pa. 1992) .................................................................................................. 7

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) ............................................................................................... 4

*U.S. v. Davis*,
    648 F.3d 84 (2d Cir. 2011) ............................................................................................... 5

*Yarnall v. Almy*,
    703 A.2d 535 (Pa. Super. Ct. 1997) ................................................................................. 5

*Zafiro v. U.S.*,
    506 U.S. 534 (1993) ......................................................................................................... 3

**RESTATEMENTS**

Restatement (Second) of Torts § 552 ......................................................................................... 9

Deloitte's opening memorandum of law demonstrated the fundamental flaws in the claims asserted by plaintiffs, as successors to entities owned and controlled by members of the Rigas family who have either been convicted, pled guilty or settled criminal and civil claims by the United States Government. In their Opposition, plaintiffs do nothing to contradict the fundamental points supporting dismissal presented by Deloitte in its Opening Memorandum.

First, the Rigas family forfeited "all of their respective interests" in the relevant entities in a settlement agreement (the "Settlement Agreement") containing an integration clause that precludes consideration of any term sheets or descriptions of the negotiation of the Settlement Agreement that fall outside of the Settlement Agreement's unambiguous terms. Second, as Timothy and James Rigas admitted, there were no contracts between Deloitte and James Rigas in his "extremely limited" interaction with Deloitte, and "no one really thought it was necessary for Deloitte & Touche to . . . audit" Highland Preferred or Highland Holdings. The engagement letters at issue clearly identify the parties subject to a contractual relationship with Deloitte and plaintiffs' efforts to cloud the issue with vague and imprecise statements alleged to have been made nearly 30 years ago are insufficient to establish an explicit or implicit contractual or third party beneficiary relationship. Those comments are also insufficient to satisfy the near privity requirement for a professional negligence or negligent misrepresentation claim. Finally, where, as here, it is undisputed that Coudersport Cable Company ("Coudersport") was solely owned and controlled by John Rigas, for the same reasons expressed in this Court's Order dismissing claims asserted directly by John Rigas, the doctrine of *in pari delicto* precludes claims by Zito Media, as successor to Coudersport. Deloitte thus is entitled to summary judgment.

## I.     Zito I Cannot Establish That It Has Standing.

The summary judgment record is undisputed and clear: Zito I did not receive any transfer of litigation rights from the predecessor entities. Rather, the Rigases forfeited to the

Government "*all of their respective interests*" in Zito I's predecessors in a fully integrated Settlement Agreement prior to any alleged assignment of interests to Zito I.  Statement of Facts ("SOF") ¶ 36 (emphasis added).  Any exceptions to the blanket forfeiture of interest were explicit in the Settlement Agreement.  *Id.* ¶¶ 39-41.  Moreover, the Settlement Agreement contained a clear integration clause providing that:

> This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof.  This Agreement shall not be modified, supplemented, amended or otherwise changed, or any of its provisions waived, in any manner whatsoever except by written instrument signed by the Parties.

*Id.* ¶ 43; *see also* Brief for the United States of America, *In re Century/ML Cable Venture*, Hoeffner Reply Aff., Ex. A at *32 ("[The Settlement Agreement] contained [a] clear integration clause[ ] that provided that the written agreement constituted the parties' *entire* agreement, and that required any modifications to be made in writing, to avoid just this sort of possible dispute." (emphasis added)).  As a result, there was nothing left to transfer to Zito I and Zito I has no legal interest here and no standing.  *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.").

The Government itself has taken the position in *In re Century/ML Cable Venture*, that Zito I did not receive a transfer of litigation rights.  *See* Ex. A at *27 ("[T]he alleged transfer of Highland's claim to Zito was invalid.").  The Government noted that the Settlement Agreement "provided that the Government would obtain clear title to all of" the forfeited entities.  *Id.* at *15. The Government further explained: "Zito [I] puts forth nothing coming from the Government that purports to demonstrate consent for the transfer, let alone a writing signed by a Government official with actual authority to bind the United States. . . .  Under the express terms of the

2

agreements, the absence of any writing signed by the Government renders any side agreement unenforceable." *Id.* at *32.[1]  That, of course, remains true in this matter.

Plaintiffs' two main arguments are completely without merit.[2]  First, contrary to the clear language of the Settlement Agreement that "all of their respective interests" were forfeited, plaintiffs argue that the Court should consider extrinsic evidence of (1) a list of "*Proposed Settlement Terms*" drafted by counsel for the Rigas family prior to negotiations with the Government that requested that "[t]he Rigases retain all claims and causes of action (and any proceeds resulting therefrom) against[, *inter alia*,] Deloitte" (McMichael Decl. at Ex. B) (emphasis added); and (2) an alleged statement during negotiations by the Government that it was not seeking forfeiture of the Rigas family's litigation rights against Deloitte (Opp'n Mem. at 13).  According to plaintiffs, their own term sheet and the negotiations of the Settlement Agreement support that the predecessor entities did not forfeit their litigation rights.  Even if this one-sided view of events were true, however, it suggests the opposite—that the final agreement, which contains no exceptions for litigation rights and does contain an integration clause, represents a rejection of plaintiffs' alleged proposed terms.

In any event, in considering this Motion, the Court should consider only competent evidence, *see, e.g.*, *Zafiro v. U.S.*, 506 U.S. 534, 540 (1993) (explaining that important element of fair trial is consideration of *only* relevant and competent evidence), and, under the parol evidence rule, the incompetent extrinsic evidence that plaintiffs point to should not be considered

---

[1] Contrary to the Government's clear position in its Second Circuit Brief, plaintiffs argue that, during the pendency of the bankruptcy proceedings involving debtor Century/ML, the debtor submitted a letter *written by Adelphia's attorney* (and not signed by the Government) stating that the Government confirmed that it had agreed not to seek forfeiture of the claims against third parties in the Settlement Agreement. (Opp'n Mem. at 13.)  As the Government itself remarked with respect to the letter signed by Adelphia's counsel: "Zito [I]'s evidentiary showing is inadequate." Ex. A at *32.

[2] Plaintiffs also argue that collateral estoppel does not apply to bar the claims of Zito I. (Opp'n Mem. at 14-17.)  In its Opening Memorandum, however, Deloitte did not argue that collateral estoppel applied to bar Zito I's claims.

3

by the Court. "Under the parol evidence rule the clear and unambiguous terms of a valid, integrated written instrument cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence." *Happy Dack Trading Co., Ltd. v. Agro-Indus., Inc.*, 602 F. Supp. 986, 991 (S.D.N.Y. 1984). Where (as here) a contract contains an integration clause, courts are obligated to apply the parol evidence rule to bar introduction of extrinsic evidence to vary or contradict the terms of the written agreement. *See, e.g.*, *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (citation omitted).

Here, plaintiffs do not and cannot argue that the terms of the Settlement Agreement are ambiguous and that the Settlement Agreement contains an integration clause, which plaintiffs also do not contend is ambiguous. Rather, plaintiffs suggest that the predecessor entities' litigation rights were not the "subject matter" of and therefore fall outside the Settlement Agreement. (Opp'n Mem. at 14.) That tortured reading of the clause is completely inconsistent with the Settlement Agreement itself, which provided for plaintiffs' forfeiture of "all of their respective interests" in the entities allegedly transferred to Zito I. SOF ¶¶ 7, 36, 38. Nothing in the Settlement Agreement exempts or carves out litigation rights. *Id.* ¶ 42.

Under the parol evidence rule, therefore, evidence of the Rigas family's list of discussion points and alleged oral agreement are inadmissible and cannot be considered by this Court. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court"). Indeed, "the parol evidence rule rests on the rationale that a later written agreement has supplanted prior negotiations." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (quoting E. Allan Farnsworth, Contracts, § 7.3, at 480 (2d ed. 1990)).

Second, plaintiffs absurdly argue that Deloitte does not have standing to raise the issue of Zito I's standing. (Opp'n Mem. at 11.) Any party can raise standing and, in fact, the Court has

4

an independent obligation to determine whether Zito I has standing. *Mancuso v. Consol. Edison Co. of New York*, 130 F. Supp. 2d 584, 588 (S.D.N.Y. 2001).[3] The dispositive question is whether Zito I has an interest in relevant litigation rights (which it does not) and, in order to determine the answer, the Court must review the operative documents that relate to those rights. A review of those documents, including the Settlement Agreement, shows that all of the relevant interests of Zito I's predecessors were forfeited to the Government prior to any alleged assignment of those interests to Zito I.[4] As a result, Zito I lacks standing.

## II.   Deloitte Is Entitled to Summary Judgment on the Contract and Negligence Claims of James Rigas, Highland Holdings, and Highland Preferred.

Breach of contract and negligence claims against accountants and auditors generally require privity of contract. *See Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961); *see also In re Phar-Mor, Inc. Secs. Litig.*, 892 F. Supp. 676, 690 (W.D. Pa. 1995). Regardless of how a contract is formed, the following must exist in order for that contract to be enforceable: offer, acceptance, and consideration or a mutual meeting of the minds. *See, e.g.*, *Yarnall v. Almy*, 703 A.2d 535, 538 (Pa. Super. Ct. 1997). Moreover, "[a]n enforceable contract requires . . . that the terms of the bargain be set forth with sufficient clarity." *Lackner v. Glossner*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006) (citation omitted).

A contractual relationship—express or implied—did not exist between Deloitte and James Rigas, Deloitte and Highland Holdings, and/or Deloitte and Highland Preferred sufficient

---

[3] Deloitte does not seek to compel performance or payment of damages under the contract, as plaintiffs try to suggest when citing, for example, *Premium Mort. Corp. v. Equifax, Inc*., 583 F.3d 103 (2d Cir. 2009) (finding that non-party plaintiffs could not seek payment or performance under contract).

[4] Plaintiffs' assertion that the forfeiture should not relate back to the time of the criminal conduct because certain members of the Rigas family forfeited their assets pursuant to settlement negotiations and not pursuant to any findings of wrongdoing, neglects the fact that the culpability of members of the Rigas Family is irrelevant. *See U.S. v. Davis*, 648 F.3d 84, 92 (2d Cir. 2011) (citing *Bennis v. Michigan*, 516 U.S. 442, 446 (1996), which explained that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was put to such use."). Even where forfeiture occurs pursuant to a settlement agreement, "title to forfeited property automatically vests in the Government at the time of the defendant's criminal act." *In re Dreier LLP*, 429 B.R. 112, 126 (Bankr. S.D.N.Y. 2010).

to confer the necessary privity. There is no evidence of an express contract. First, it is undisputed that there was no written contract between Deloitte and James Rigas, Deloitte and Highland Holdings, or Deloitte and Highland Preferred.[5] SOF ¶¶ 8, 16. Second, plaintiffs point to alleged oral statements made nearly 30 years ago that in no way constitute a promise of any performance (as is necessary when making an offer) and lack sufficient clarity to form the basis of a contract. (Opp'n Mem. at 17-19; *see also Lackner*, 892 A.2d at 30.) Third, plaintiffs wrongly suggest that Deloitte owed a duty to James Rigas pursuant to the engagement letters. (Opp'n Mem. at 19.) James Rigas was not a party to the engagement letters and cannot enforce any obligations contained therein. *See, e.g.*, *Rottmund v. Continental Assurance Co.*, 761 F. Supp. 1203, 1208 (E.D. Pa. 1990) (citation omitted). In fact, he could not identify any contract under which he engaged Deloitte to provide services directly to him and testified that his interactions with Deloitte were "very limited" or "extremely limited." SOF ¶ 16. And, the law is clear that, when an engagement exists between an auditor and a company, the duties arising out of the engagement are owed to the company—"*not to the directors individually.*" *In re Phar-Mor*, 892 F. Supp. at 694 (emphasis added).[6]

Similarly, there is no evidence of an implied contract between Deloitte and James Rigas, Deloitte and Highland Holdings, and/or Deloitte and Highland Preferred. The record does not support the existence of an offer, acceptance, and consideration or meeting of the minds. Although plaintiffs allege that "James Rigas and the Highland RFPs sought advice from Deloitte

---

[5] Indeed, with respect to Highland Holdings and Highland Preferred, Timothy Rigas explained that such a contractual relationship was not necessary "because there was no real audit requirement . . . so no one thought it was really necessary for Deloitte & Touche to . . . audit" them. SOF ¶ 8.

[6] Plaintiffs argue that the engagement letters evidence contracts outside the auditing context because they "expressly encouraged management to seek advice from Deloitte throughout the year." (Opp'n Mem. at 19.) But the engagement letters provide that Deloitte "would be pleased to assist the *Companies* on issues as they arise throughout the year." (Comerford Aff. at Ex. V (emphasis added).) "Companies" is defined in the engagement letters as those companies for which Deloitte served as independent auditor. (*Id.*) None of James Rigas, Highland Holdings, or Highland Preferred is included in "Companies" under the engagement letters.

on significant issues such as related party transactions and co-borrowing" (Opp'n Mem. at 20), that contention is both unsupported by the record and irrelevant for purposes of contract formation. In addition, the only case cited by plaintiffs involves an attorney-client relationship, which is subject to different standards under the law. *Compare Koken v. Steinberg*, 825 A.2d 723, 729 (Pa. Commw. Ct. 2003) (requiring, *inter alia*, consideration for enforceable contract against accountant) *with Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993) (finding attorney-client relationship where no consideration existed).

In order to sidestep the contractual privity requirement, plaintiffs argue that James Rigas, Highland Holdings, and Highland Preferred either fall into an exception or that the requirement is otherwise not applicable to them. First, plaintiffs argue that they are entitled to recover for breach of contract because James Rigas, Highland Holdings, and Highland Preferred are third party beneficiaries of the engagement letters. (Opp'n Mem. at 20-21.) But, under Pennsylvania law, recognition of a third party beneficiary requires "both parties to the contract [to] express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties . . . ." *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992) (emphasis in original). Further, "the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter into the contract." *Altoona City Auth. v. L. Robert Kimball & Assocs.*, 26 Pa. D. & C. 4th 521, 532 (Com. Pl. 1995) (citation omitted).

The summary judgment record does not support plaintiffs' contention that they were third party beneficiaries. None of the engagement letters "express[es] an intention" to benefit them, (*See* Exs. N and O, attached to Hoeffner Aff., appended to Opening Mem.), and "circumstances . . . so compelling" do not exist such that recognition of James Rigas, Highland Holdings, and

7

Highland Preferred as third party beneficiaries is appropriate to effectuate the intention of the parties to the engagement letters. Likewise, there is no evidence that any benefit to James Rigas, Highland Holdings, and Highland Preferred was a "motivating factor" in the contracting parties' decision to enter into the engagement letters.

Second, plaintiffs argue that they are entitled to recover for breach of professional duty even in the absence of privity because Deloitte specifically undertook to provide professional services to James Rigas, Highland Holdings, and Highland Preferred. (Opp'n Mem. at 21-22.) When a professional duty of care arises in the absence of privity pursuant to a "specific undertaking" to furnish professional services, *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983), the relationship that arises as a result must be a "bond so close as to approach that of privity," *Brandow Chrysler Jeep Co. v. DataScan Techs.*, 511 F. Supp. 2d 529, 538 (E.D. Pa. 2007) (citation omitted). Indeed, where contractual privity is lacking, a plaintiff can maintain a claim for professional negligence only where that plaintiff's reliance on the defendant's professional services "was not merely one possibility among many, but the '*end and aim* of the transaction.'" *Coleco Indus., Inc. v. Berman*, 423 F. Supp. 275, 309 (E.D. Pa. 1976) (emphasis added; citation omitted). Here, there is no evidence in the summary judgment record even suggesting that Deloitte specifically undertook to provide professional services to James Rigas, Highland Holdings, or Highland Preferred; or of "a bond so close as to approach that of privity"; or that plaintiffs' reliance was the "end and aim" of the professional relationship entered into by Deloitte and, *inter alia*, Adelphia.

And, finally, plaintiffs argue that they are entitled to recover for negligent misrepresentation because the lack of privity is not fatal. (Opp'n Mem. at 22.) Plaintiffs cite *Bilt-Rite Contractors, Inc. v. The Architectural Studio* for its adoption of The Restatement

8

(Second) of Torts § 552 in the context of design professionals and argue that the same exception to the privity requirement should apply here.  866 A.2d 270, 287 (Pa. 2005).  Pennsylvania's privity rule in the context of accountants and auditors, however, "would be swallowed by an exception for negligent misrepresentation claims since an accountant always makes a representation, *i.e.*, a report, which is often then reviewed by nonparties to the contract for various reasons."  *In re Phar-Mor*, 892 F. Supp. at 693 (finding § 552 to require privity in accounting and auditing context) (citation omitted).

Even assuming *arguendo* that *Bilt-Rite*'s interpretation of § 552 applies in this context, it would subject Deloitte to liability for negligent misrepresentation "only to those persons for whose benefit and guidance [the alleged misinformation] is supplied."  RESTATEMENT § 552, cmt. h.  In addition, the tort is tailored such that only plaintiffs who have relied on the alleged misinformation "in the course of their own business activities" can maintain a claim for negligent misrepresentation.  *Bilt-Rite*, 866 A.2d at 285-86; *see also* RESTATEMENT § 552(1).  Here, there is no evidence in the summary judgment record that Deloitte provided advice for the benefit of James Rigas, Highland Holdings, and Highland Preferred.  And there is no evidence in the summary judgment record to support that James Rigas relied on the alleged misinformation in the course of his business activities.

### III.   The Doctrine of *In Pari Delicto* Bars the Claims of Zito Media.

The doctrine of *in pari delicto* operates to bar recovery for a plaintiff that is an active, voluntary participant in the wrongful conduct for which it seeks redress and shares "substantially equal [or greater] responsibility for the underlying illegality" as compared to the defendant.  *Official Comm. Of Unsecured Credits of Allegheny Health Educ. and Research Found. v. PricewaterhouseCoopers, LLP*, 989 A.2d 313, 329 (Pa. 2010) ("*AHERF*") (citations omitted).  Where the entity that asserts claims was wholly owned and controlled by one person, that entity

9

is charged with the same knowledge and conduct of its sole owner. *Id.* at 331 ("Were the action between a corporation controlled by a single individual and a sole-proprietor auditor, there would be a good case to be made that *in pari delicto* should apply to negate all causes of action arising out of intentional auditor misrepresentations made at the behest of the owner, and thus, will full corporate complicity.").[7] Moreover, where, as here, a company's sole owner and controller is himself guilty of wrongdoing, the doctrine of *in pari delicto* is applicable without further considerations. *Id.* at 333.[8]

This Court already has determined that the claims of former plaintiff John Rigas were barred by the doctrine of *in pari delicto* because he engaged in illegal conduct and his claims against Deloitte were grounded upon the same conduct. (*See* Opinion and Order, Dec. 27, 2013, at 11.) Because Zito Media asserts its claims exclusively as successor-in-interest to Coudersport, which was owned and controlled by John Rigas at all times, Zito Media is charged with the same knowledge and conduct as its sole owner. *AHERF*, 989 A.2d at 331.[9] Accordingly, Coudersport stands *in pari delicto* and Deloitte is entitled to summary judgment on all claims asserted by Zito Media.

---

[7] Plaintiffs argue that Deloitte did not provide evidence with respect to any wrongdoing involving Coudersport. Such evidence, however, is not necessary, as Coudersport was owned and controlled solely by John Rigas.

[8] Plaintiffs argue that John Rigas did not control Coudersport by pointing to the testimony of Michael Rigas who stated that Coudersport had a management agreement with Adelphia, under which two individuals helped John Rigas with the operations and management of Coudersport. (Dep. Tr. M. Rigas at 93:16-21). That Coudersport entered into an agreement for Adelphia to provide management assistance to Coudersport does not create an issue of fact as to John Rigas's ultimate control of Coudersport. Indeed, as Tim Rigas unequivocally stated, John Rigas controlled the decision-making at Coudersport (Dep. Tr. T. Rigas at 14:16-15:1.)

[9] Plaintiffs' reliance on Judge Gerber's opinion in *In re Adelphia Comms. Corp.*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007), is misplaced. That case did not involve the successor to an entity solely owned and controlled by an individual convicted of illegal conduct, as is presented here. The question was whether John and Timothy Rigas's conduct should be imputed to Adelphia for the purpose of barring an innocent creditors' committee from recovering from banks for, *inter alia*, aiding and abetting alleged breaches of fiduciary duty by Adelphia's management. Judge Gerber rejected the defendants' use of *in pari delicto* because application would have produced an inequitable result. *Id.* In contrast here, Zito Media asserts claims against Deloitte on behalf of Coudersport, a company wholly owned by John Rigas, an individual already dismissed from this case under the doctrine of *in pari delicto*. Thus, dismissal of Zito Media from this action would be an equitable result; whereas granting any sort of recovery to Zito Media, would be a perversion of, and undoubtedly undermine, the rationale underlying the doctrine of *in pari delicto*.

## IV. Conclusion

For these reasons and the reasons in Deloitte's Opening Memorandum, Deloitte respectfully requests that the Court grant Deloitte's Motion for Summary Judgment.

Dated: New York, NY
      May 19, 2014

Respectfully submitted,

/s/ Timothy E. Hoeffner
Timothy E. Hoeffner
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10022
P: 212.335.4500
F: 212.335.4501
timothy.hoeffner@dlapiper.com

Courtney G. Saleski
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

James E. Canning
**Cravath, Swaine & Moore LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Attorneys for Defendant*
*Deloitte & Touche LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am one of the attorneys for Deloitte & Touche LLP in this action and that, on May 19, 2014, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

/s/ Timothy E. Hoeffner
Timothy E. Hoeffner
